(No. 90-CC-0570— )

CENTRAL ILLINOIS PUBLIC SERVICE CO., Claimant, *v.*
THE STATE OF ILLINOIS, Respondent.

*Order filed March 6, 2001.*

CRAIG S. BURKHARDT, for Claimant.

JIM RYAN, Attorney General (PHILLIP MCQUILLAN,
Assistant Attorney General, of counsel), for Respondent.

## ORDER

MITCHELL, J.

The Claimant originally filed to collect a claim in the
amount of $180,222.85 against the State of Illinois for
utility services rendered to Eastern Illinois University.
The claim included $173,291.21 for utility services and
$6,931.64 for late payment charges.

1

At the trial Claimant's witness Laurie Karman testified that she was the Credit and Collections Administrator for Central Illinois Public Service Company (CIPS). Ms. Karman testified that the bill in question for monthly utility service was for the period of May 22nd to June 22nd, 1989 and the bill was issued June 24th. In accordance with the rate schedule of CIPS that bill was due July 10th. Ms. Karman testified that late fees of $3,465.82 were added for August and September, the fees being calculated on the basis of 2% of the overdue bill per month and based on the State Prompt Payment Act. (30 ILCS 540/0.01 *et seq.*) When the bill was not paid by September 29, Claimant filed with the Court of Claims.

Eastern Illinois University paid the bill for electric service on or about September 29 but did not pay the interest. This payment was received by Claimant on or about October 2, 1989.

Ms. Karman further testified that Exhibit 2 is rate 9B which is one of the CIPS filed rates with the Illinois Commerce Commission which would have been in effect during the period in question. Rate 9B provided for late fees of 1½% per month if utility bills were not paid within the 14-day period after they were issued. Ms. Karman testified that if the late fees were calculated according to Rate 9B, they would be 1½% of the amount due on July 10, August 10, and September 10 for a total due of $7,798.11.

Claimant then moved to amend its complaint to request a total of $7,798.11 and the Respondent did not object.

Marlyn Finley testified on behalf of the Respondent that he is Director of Business Services and Treasurer at Eastern Illinois University. Mr. Finley admitted that the CIPS bill would normally had been paid within a two-week period in accordance with the usual practice of the

University and he did not know why this particular bill was not paid within that period. Mr. Finley further testified that at the time in question the CIPS bill was being paid from non-appropriated local funds which were revenue bond funds for the operation of facilities for which the bonds were issued. At that time EIU could carry over two months of operating money to pay current operating expenses. This would have amounted to 2.2 million dollars of revenue that would carry over each year for the bond fund in question.

Mr. Finley also testified that it was his understanding that the State Prompt Payment Act would apply to these bills. Mr. Finley testified that, although they paid the utility bills out of the bond revenue funds, he felt that they could not pay late payment fees from the bond revenue funds.

In its brief, Claimant noted that since the funds used to pay the utility bill are not appropriated funds, but were from the Respondent's revenue bonds, that the State Prompt Payment Act does not apply. Rate 9B, the applicable rate sheet which was applied to Respondent for electric utility services, provides for a 1½% penalty of the unpaid balance for bills remaining unpaid 14 days from the date of the issue of the bill. Based on Claimant's standard billing procedures the bill remained unpaid for each of three months, July 10, August 10, September 10, 1989, resulting in a penalty of 1½% for each of the three months for a total of $7,798.11.

The provisions of the revenue bonds, which were applicable on the dates in question, allow full payment of "* * * all necessary operating expenses, current maintenance charges, expenses of reasonable upkeep and repairs, equipment purchases, fees due the paying agent on the 1978 bonds and the Prior Refunded Bonds and the Registrar on the Bonds, properly allocated share of charges

for insurance and all other expenses incident to the operation of the System."

At the end of each fiscal year, Eastern Illinois University may retain in its revenue fund moneys sufficient for operation and maintenance for the next 30 days and an operating reserve not to exceed one month. It is clear that the Respondent is not precluded from paying the late fees on the utility bill by the fact that the fiscal year changed on June 30. The late fees were incurred July 10, August 10, and September 10, 1989 and thus were incurred during the 1990 fiscal year and would have been payable from bond funds which were available during that year.

In this case, it is uncontradicted that the bill for utility services was not paid until the end of September 1989. For whatever reason it was paid late and therefore it appears that late fees are due from Eastern Illinois University to Central Illinois Public Service.

In view of the fact that the payment of the utility bill was from non-appropriated funds, calculating the late payment in accordance with the State Prompt Payment Act was an error. As for interest pursuant to the utility rate schedule, based on our decision in *Illinois Power Company v. State* (1995), 30 Ill. Ct. Cl. 506, it too is denied.

Wherefore, it is hereby ordered that this claim be, and hereby is, denied.